# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RUSSELL T. A., II, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 17-CV-440-JFJ |
| v. | ) |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Russell T. A., II seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i) and 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals. For reasons explained below, the Court affirms the Commissioner's decision denying benefits.

**I.    Standard of Review**

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The Court may neither re-weigh the evidence nor substitute its

judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands so long as it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Procedural History and ALJ's Decision

Plaintiff, then a 46-year-old male, protectively applied for Title II benefits on May 1, 2014, alleging a disability onset date of January 4, 2011. R. 162-165. Plaintiff last met the insured status requirements of the Act on December 31, 2011. R. 19. Plaintiff claimed he was unable to work due to psoriatic arthritis. R. 200. Plaintiff's claim for benefits was denied initially on July 21, 2014, and on reconsideration on October 27, 2014. R. 81-84; 88-90. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held an initial hearing on November 9, 2015, but took no substantive testimony. Instead, the ALJ gave Plaintiff, who was pro se at that time, an opportunity to gather more medical records and retain an attorney. R. 30-40. Plaintiff's hearing was reset to April 12, 2016, and proceeded with Plaintiff's counsel present. R. 41-65. Due to reported work activity spanning the months of January through May 2011, Plaintiff's attorney amended Plaintiff's alleged onset date to May 31, 2011. R. 47, 48.

Plaintiff testified that he worked building swimming pools for twenty years. Plaintiff was employed by Vivian Pools for "over ten years" installing pools (R. 49), and then owned his own pool company for ten years doing the same type of work. *Id.* All of Plaintiff's past relevant work was performed at the "very heavy" exertional level, skilled, with SVPs of 8 (installer) and 7 (independent contractor). R. 22. Plaintiff testified that he had to stop building pools in May 2011 because he "couldn't function because of my hands were – I had sausage fingers, I couldn't make a fist." R. 51. Plaintiff stated that as of May 2011, normal pool installations that required an average of two months to complete took him six months to complete. *Id.*

2

Upon questioning, Plaintiff testified that he experienced episodes of psoriasis since the 1990s that would "come and go," and he did not seek or receive treatment for psoriatic arthritis beyond pain and anti-inflammatory medication until 2012. R. 51-52, 55. However, in 2011 Plaintiff testified that he experienced "unexplainable fever … for weeks" and had difficulty breathing and walking, so he went to see a rheumatologist. R. 55. Plaintiff testified that by the end of 2011, he spent a total of three hours per day out of bed, and the remainder of the time lying down to relieve symptoms. R. 57.

The ALJ found that Plaintiff did not engage in any substantial gainful activity from his amended alleged onset date, May 31, 2011, through his date last insured ("DLI") of December 31, 2011. R. 19. The ALJ noted that Plaintiff worked on some pools after his original alleged onset date of January 4, 2011, but the work did not rise to the level of substantial gainful activity. Plaintiff denied working after his amended alleged onset date. *Id.* The ALJ found that through the DLI, Plaintiff had the severe impairments of psoriatic arthritis, psoriasis, and obesity. *Id.* Plaintiff's impairments did not meet or medically equal any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ discussed listing 14.09 for psoriatic arthritis, finding Plaintiff did not have "a persistent inflammation or persistent deformity [that] causes an inability to ambulate effectively and/or to perform fine and gross movements effectively" and that Plaintiff's condition did not "fulfill other requirements of severe fatigue, malaise, or involuntary weight loss." R. 20. The ALJ also discussed listing 8.05 for psoriasis, finding Plaintiff's condition "does not include extensive lesions persisting at least three months despite continuing treatment as prescribed." *Id.* The ALJ found Plaintiff's obesity, combined with his other impairments, "somewhat reduce[d Plaintiff's] ability to stand, walk, lift and carry. A reduction in capacity to work at the light exertional range with some further appropriate work restrictions is therefore

warranted. These limitations are accounted for in the residual functional capacity [("RFC")] as determined herein." R. 20.

Prior to making a step four finding and after "careful consideration of the entire record," the ALJ found that Plaintiff had the following RFC during the relevant time period:

> The claimant had the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). He can lift/carry 20 pounds occasionally and 10 pounds frequently. In an eight-hour workday, he can stand/walk for six hours and sit for six hours. There can be no climbing of ladders, ropes, or scaffolds. There can be frequent climbing of stairs and ramps, stooping, crouching, crawling, kneeling, handling, and grasping.

*Id.* In making his RFC decision, the ALJ summarized Plaintiff's hearing testimony, noting that Plaintiff testified he stopped working "due to illness in May 2011," and Plaintiff's testimony that in 2011 "he could not turn his neck and so could not drive. His spine and every joint were affected by his psoriatic arthritis." R. 21. The ALJ further noted that Plaintiff "could not explain the statement in Exhibit 2F, page 45 that he did a lot of work in 2012. He thought it might refer to chores he did around his home, not work for which he was paid. However, the report from Michael Vu, M.D. states he had been 'very busy with a lot of physical jobs . . . .'" *Id.*

In his RFC discussion, the ALJ pointed out that "[a]ll but a few of [Plaintiff's] medical records date after his date last insured." *Id.* Records from Muscogee Nation Division of Health, dated December 20, 2011, show that Plaintiff presented complaining of a psoriasis flare and psoriatic arthritis. Plaintiff's chronic problems during that visit were listed as "other psoriasis and similar disorders, sleep apnea, obstructive, elevated BP without hypertension." R. 22. The ALJ mentioned findings from this December 20, 2011, visit that, although Plaintiff did have "extensive psoriatic plaques on his torso and extremities," he also had normal range of motion, muscle strength, and stability in all extremities, and no pain on inspection. *Id.* The ALJ also noted that a "report from Jasmine Gaddy, M.D. of Claremore Indian Hospital sets [Plaintiff's] arthritic onset in September 2011 (Exhibit 5F, page 6)." *Id.*

The ALJ found that Plaintiff's complaints were "not entirely consistent with the medical evidence and other evidence" in the record, explaining:

> As stated above, the great majority of the medical records are after [Plaintiff's] date last insured. The majority, therefore, is not germane to the determination of his application for Disability Insurance Benefits. What evidence there is prior to the date last insured establishes that he then had psoriatic arthritis and psoriasis. [Plaintiff] testified that his arthritis was treated as early as the 1990's. However, according to treating physician Jasmine Gaddy, M.D., the arthritis onset was only in September 2011. In the absence of any supportive evidence prior to Dr. Gaddy's, her onset statement receives greater weight than the claimant's. It is reasonable to believe that [Plaintiff] would have provided his earlier treatment records to Dr. Gaddy had they been available. Without earlier evidence, it is not possible to assess the medical status of the arthritis and psoriasis in the years preceding his amended alleged onset date of May 31, 2011. The existing records establish for certain the extent of his arthritis and psoriasis *after* the date last insured. They do not establish their extent *prior* to the crucial date last insured. This interpretation is supported by the DDS consultant Edna Daniel, M.D. In her review of the record on October 22, 2014, Dr. Daniel wrote, "No MER in file before DLI of 12/31/11 and no new sources at Reconsideration. Insufficient Evidence prior to date last insured" (Exhibit 3A, page 5). At the initial level of consideration, DDS consultant Carmen Bird, M.D. also found insufficient medical evidence before the date last insured (Exhibit 2A, page 4).

R. 22 (emphasis in original).

The ALJ found that Plaintiff was unable to perform any of his past relevant work because it exceeded his RFC. *Id.* On his DLI of December 30, 2011, Plaintiff was 44 years old, which is defined as a younger individual. Based on testimony from the vocational expert, the ALJ found at step five of the sequential evaluation process that Plaintiff could have performed the jobs of "Cashier II (DOT 211.462-010) 'light' unskilled with a SVP of 2, of which there are approximately 1,600,000 jobs nationally, Sales attendant (DOT 299.677-010) 'light' unskilled with a SVP of 2, [208,000 jobs nationally], and Parking lot attendant (DOT 915.473-010) 'light' unskilled with a SVP of 2 [84,000 jobs nationally]." R. 23. The ALJ subsequently found that Plaintiff was "not under a disability, as defined by the Social Security Act, at any time from May 31, 2011, the amended onset date, through December 31, 2011, the date last insured." R. 24. The Appeals Council denied review, and Plaintiff appealed. R. 1-5; ECF No. 2.

5

### III. Issue on Appeal and Parties' Arguments

Plaintiff raised only one point of legal error: that the ALJ failed to comply with Social Security Ruling ("SSR") 83-20 by "fail[ing] to call a medical expert at the Claimant's hearing on April 12, 2016," to infer "onset of disability." ECF No. 18 at 5-6. Plaintiff contends that the ALJ was required to call a medical expert pursuant to SSR 83-20 because: (1) Plaintiff's onset of disability was of non-traumatic origin; and (2) the medical evidence was ambiguous as to onset date. *See* SSR 83-20, 1983 WL 31249. The Commissioner argues that SSR 83-20 does not apply because Plaintiff was never found disabled under the Act and the ALJ's decision is supported by substantial evidence.

### IV. Analysis

For reasons explained below, the Court concludes that (1) the ALJ did not err in failing to obtain a medical advisor in accordance with SSR 83-20; and (2) the ALJ's finding of non-disability prior to the DLI is supported by substantial evidence.

#### A. Background on SSR 83-20

SSR 83-20, which was in place at the time of the ALJ's decision, "sets forth an analytical framework for assessing the date of onset for a disability of traumatic or non-traumatic origin." *Blea v. Barnhart*, 466 F.3d 903, 909 (10th Cir. 2006). Where a disability is of non-traumatic origin, such as Plaintiff's alleged disability of psoriatic arthritis, the "onset" determination requires consideration "of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." SSR 83-20, 1983 WL 31249, at *2. "[W]hen medical evidence does not establish the precise onset date, the ALJ may have to 'infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.'" *Blea*, 466 F.3d at 909 (quoting SSR 83-20). For example, it may be necessary to infer a disability onset date (1) where an impairment is slow progressing and the alleged onset and date

last worked are far in the past and adequate medical records are not available; or (2) when onset of a disabling impairment occurred prior to the date of the first recorded medical examination. *Blea*, 466 F.3d at 909. When onset must be inferred, SSR 83-20 provides that the ALJ "should call on the services of a medical advisor." SSR 83-20 at *3. "[T]he issue of whether the ALJ erred by failing to call a medical advisor turns on whether the evidence concerning the onset of [a claimant's] disabilities was ambiguous, or alternatively, whether the medical evidence clearly documented the progression of his conditions." *Blea*, 466 F.3d at 912.[1]

### B. ALJ Did Not Err in Failing to Obtain Medical Advisor

For purposes of this Order, the Court assumes that an ALJ may commit error under SSR 83-20, even in the absence of a finding of "disability" under the Act.[2] However, the Court

---

[1] Effective October 2, 2018, SSR 83-20 was rescinded and replaced by SSR 18-01p, 2018 WL 4945639, and SSR 18-02p, 2018 WL 4945640. SSR 18-01p, in contrast to SSR 83-20, makes clear that use of a medical advisor is discretionary. *See* SSR 18-01p at *1 (ALJ "may, but is not required to" use medical advisor to infer onset date of disability). SSR 83-20, and *Blea*'s interpretation thereof, govern this case.

[2] The majority of decisions within the Tenth Circuit indicate that SSR 83-20 is triggered only where a claimant has been found disabled under the Act. *See, e.g., Hill v. Astrue*, 289 F. App'x 289, 294 (10th Cir. 2008) ("Expert testimony is helpful *where the ALJ has determined that the claimant eventually became disabled* but there is some ambiguity about whether the onset of this disability occurred prior to the expiration of the claimant's last insured status.") (emphasis added); *Gutierrez v. Astrue*, 253 F. App'x 725, 729 (10th Cir. 2007) ("[T]he need to determine an onset date is relevant only where a claimant has been found disabled."); *Jaramillo v. Colvin*, 184 F. Supp. 3d 1086, 1092 (D.N.M. 2015) ("A finding of disability is a predicate to utilization of SSR 83-20; there is no need to determine the onset date if the plaintiff is not disabled."); *Baumann v. Astrue*, No. 2:12-CV-00713-EJF, 2013 WL 5435321, at *11 (D. Utah Sept. 30, 2013) (same); *Taylor v. Colvin*, No. 12-4130-JWL, 2013 WL 6229370, at *4-5 (D. Kan. Dec. 2, 2013) (same). Although *Blea* involved a claimant who had been found disabled under the Act, Plaintiff argues that *Blea*'s reasoning supports his position in this case. *See* 466 F.3d at 911 ("[T]he issue of whether a medical advisor is required under SSR 83-20 does not turn on whether the ALJ could reasonably have determined that [the claimant] was not disabled before [her DLI].") (quoting *Glebenick v. Chater*, 121 F.3d 1193, 1200 (8th Cir. 1997)); *see generally Fischer v. Colvin*, 831 F.3d 31, 32 (1st Cir. 2016) (explaining differing circuit positions on SSR 83-20 and urging Commissioner to clarify the ruling). Because this case can be resolved on other grounds, the Court declines to reach this question. Notably, SSR 18-01p now clarifies that ALJs need only decide an "established onset date" if they "find that a claimant meets the statutory definition of disability and meets the applicable non-medical requirements during the period covered by his or her application." SSR 18-01p at *5.

concludes Plaintiff is not entitled to relief, because he has not demonstrated the type of ambiguity that would trigger any duty to obtain a medical advisor under SSR 83-20.

In this case, the ALJ relied on contemporaneous medical evidence in determining Plaintiff's conditions had not reached a disabling level of severity prior to his DLI. Specifically, the ALJ cited medical evidence indicating that, on December 20, 2011, "his psoriatic arthritis notwithstanding, he had normal range of motion, muscle strength, and stability in all his extremities" and "displayed no pain on inspection." R. 22. During this examination performed by Dr. Cynthia McCoy, Plaintiff denied gait difficulty and had an absence of impressive skin lesions. R. 533. Dr. McCoy diagnosed psoriasis and psoriatic arthritis and referred Plaintiff to a rheumatologist. R. 533. The ALJ also considered evidence immediately post-dating the DLI, including an examination by rheumatologist Dr. Jasmine Gaddy, who examined Plaintiff in May 2012. Dr. Gaddy determined that Plaintiff's arthritis "onset" was in September 2011. The ALJ expressly credited this date provided by Dr. Gaddy, rather than Plaintiff's allegation that his arthritis symptoms began in the 1990s and became disabling by May 30, 2011. R. 22.[3] The ALJ further relied on two agency physicians' opinions that there was insufficient medical evidence to support a finding of disability prior to the DLI. R. 22, 70, 76-77. Thus, this is not a case involving a long gap in medical evidence surrounding the DLI, and the ALJ did not draw any improper negative inferences based on an absence of records. *Cf. Blea*, 466 F.3d at 912 (ALJ erred by drawing negative inference from lack of records, rather than calling medical advisor, where claimant lacked medical records during an eighteen-month period that included his DLI). *See also Bigpond v. Astrue*, 280 F. App'x 716, 718 (10th Cir. 2008) (finding no SSR 83-20 error where

---

[3] Notably, the onset or diagnosis of an impairment is not equivalent to the onset of a disability. Ultimately, the ALJ found that the arthritis was not "disabling," as defined by the Act, at any time from Dr. Gaddy's estimated arthritic "onset" of September 2011 to the DLI of December 30, 2011.

ALJ relied on medical records both before and after DLI); *Hague v. Colvin*, No. 2:12-CV-00488-BSJ, 2013 WL 1150303, at *4 (D. Utah Mar. 19, 2013) (same).

Plaintiff urges the Court to reverse the ALJ's decision based on medical records post-dating the DLI. However, such evidence does not create ambiguity regarding the possibility that the onset of any "disability" – defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A) – occurred before Plaintiff's DLI. *See Bigpond*, 280 F. App'x at 718 (framing issue as "whether the evidence shows any possibility that [claimant's] cardiac problems were disabling as of [DLI]"). As explained above, the ALJ relied on medical evidence just prior to the DLI indicating Plaintiff had normal range of motion, muscle strength, and stability in all his extremities; denied gait difficulty; and had an absence of skin lesions. This contemporaneous record is unequivocal. During the hearing, Plaintiff testified that, prior to the DLI, his symptoms would "come and go." R. 55. Further, medical records indicate that prior to the DLI, Plaintiff treated his arthritis with only topical steroid medication, ultraviolet light therapy, and oral nonsteroidal anti-inflammatory medication. R. 479. The later medical findings cited by Plaintiff do not create an ambiguity warranting remand for consultation with a medical advisor. While Plaintiff's symptoms progressed from December 20, 2011, to March 6, 2012, *see* R. 537-38 (notes of Koweta Indian Health Facility dated January 5, 2012, indicating extensive psoriatic plaques on torso and extremities, and notes of Dr. Nader dated March 6, 2012, indicating Plaintiff had extensive plaques with broken skin that was oozing and bleeding), Plaintiff has not pointed the Court to ambiguities as to whether his arthritis was *disabling* prior to the DLI. In fact, as argued by the Commissioner, the x-rays of Dr. Gaddy in May of 2012 showed the following: bilateral sacroiliac joint x-rays revealed, among other findings, maintained sacral foramina and the

absence of evidence of joint fusion (R. 484); cervical spine x-rays revealed multilevel degenerative arthropathy consistent with psoriatic arthritis but preserved disc spaces (R. 485); lumbar spine x-rays revealed, among other findings, only moderate degenerative disc disease with satisfactory vertebral alignment and the absence of acute disease (R. 486); bilateral hand x-rays revealed only mild changes consistent with early psoriatic arthritis in the left hand (R. 487); bilateral knee x-rays revealed only moderate osteoarthritis (R. 488); and bilateral foot x-rays revealed only early degenerative changes consistent with psoriatic arthritis (R. 492-493). Therefore, Plaintiff has not pointed to records post-dating the DLI that cause ambiguity as to Plaintiff's ability to sustain gainful activity prior to December 30, 2011, particularly in light of unequivocal findings contained in pre-DLI medical records dated December 20, 2011. *See Bigpond*, 280 F. App'x at 718 (finding no error where plaintiff failed to "explain how [records post-dating DLI] show that her cardiac problems made her unable to engage in any substantial gainful activity in June 1997"); *Watson v. Astrue*, No. CIV-06-1337-HE, 2008 WL 312928, at *5 (W.D. Okla. Feb. 1, 2008) (rejecting SSR 83-20 argument and finding that contemporaneous medical records gave "no indication" that "Plaintiff was suffering from disabling physical or mental impairments around the time of her date last insured").

### C. ALJ's Finding of Non-Disability is Supported by Substantial Evidence

To the extent raised by Plaintiff as an error, the Court easily concludes the ALJ's non-disability finding is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Grogan*, 399 F.3d at 1261. Such evidence includes Dr. McCoy's medical records dated December 20, 2011, indicating normal musculoskeletal ranges of motion, strength, and stability in all extremities; the absence of impressive skin lesions; and a lack of gait difficulty (R. 533); the agency opinions that there was insufficient medical evidence to

support a finding of disability prior to the DLI (R. 70, 76-77); and Dr. Gaddy's medical records and x-rays in May of 2012 discussed above (R. 484-93).

V.  **Conclusion**

The Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 25th day of March, 2019.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT**